[Civ. No. 233.    Third Appellate District.—July 23, 1906.]

# In the Matter of the Estate of MARY JANE MAYHEW, Deceased.

ESTATES OF DECEASED PERSONS—DISTRIBUTION—LEGACY FOR LIFE—APPEAL—SERVICE OF NOTICE—LEGATEES OF RESIDUE—APPEARANCE AND CONSENT.—Upon appeal from a decree distributing a legacy for life under the will of the deceased, conceding that it is necessary to serve the notice of appeal on all legatees entitled to a share of the residue remaining after the death of the legatee for life, yet their written appearance, acknowledgment of service, and consent that any judgment rendered shall bind them, filed herein by parties not served, cures the omission, and gives this court jurisdiction to determine the rights of all interested parties.

ID.—PETITION TO DISTRIBUTE LEGACY—TIME FOR PRESENTATION —PROBATE OF SUPPLEMENT TO WILL.—A petition to distribute a legacy may be presented any time after the lapse of one year from the issuance of letters testamentary, as provided in section 1663 of the Code of Civil Procedure, and the time for its presentation is not delayed by subsequent proceedings through which a supplement to the will was probated as part thereof.

ID.—CONSTRUCTION OF WILL—LEGACY TO HUSBAND—UNRESTRICTED USE FOR LIFE—LEGACY OF UNUSED PART.—Applying the ordinary rules for the construction of wills to the will of the deceased testatrix, *held,* that it was her intention that a legacy of forty thousand dollars should be paid to her husband for his unrestricted use thereof for his own comfort and pleasure during his life, and that only the portion thereof which may remain unused at his decease should go to the children.

ID.—DOMINANT AND PRECEDENT INTENTION MUST CONTROL.—The dominant and main precedent intention of the testatrix in her positive directions as to the payment of the money to her husband must control, and her secondary and subordinate intention as to what should be done with it *after* her main intention has been accomplished, cannot be allowed to impair, modify or nullify her manifest dominant intention; but her latest direction is performable subsequently, and its performance is dependent upon the performance of the precedent and primary direction.

APPEAL from a decree of the Superior Court of Sacramento County, distributing a legacy. J. W. Hughes, Judge.

The facts are stated in the opinion of the court.

L. T. Hatfield, for H. A. Mayhew, Petitioner, Appellant.

W. F. George, and L. J. Hardy, for Florence Hardy, Contestant, Appellant.

McLAUGHLIN, J.—Mary Jane Mayhew died in August, 1903, leaving a holographic will, the parts of which material to our inquiry read as follows: "I direct that if my husband, Horace Allen Mayhew, provided he shall survive me, *be paid for his use his lifetime,* the sum of forty thousand dollars, or if he wishes he may have that much in value in whatever or wherever he may wish. I direct that my husband *shall have the use of this money or the interest of it his lifetime, and at his death* he shall have suitable interment and his grave marked as his children may deem proper, provided any of them shall survive him in case they do not his grandchildren may attend to that as they deem proper. . . . I direct that whatever there may be left after my husband has the forty thousand dollars *I wish to give him the use of* that the remainder be equally divided between my four children. . . . I also direct that at the death of my husband that every dollar *that is not used for his comfort and pleasure* shall be equally divided between my four children as before mentioned. . . . As a supplement to this my last will and testament I wish to say I have deeded all my real estate to my husband Horace Allen Mayhew, but in that I do not wish him *to keep and use that as his forty thousand dollars* or any part of it unless he wishes to, but that is so he can deed the property so that it need not go into court, but that he can deed to any of the children the same as they want it or he wants to let them have it, but my husband *is not to have forty thousand besides* this real estate, that is to be sold as soon as convenient and turned into money as I have directed."

The will proper was admitted to probate in September, 1903, and the supplement thereto was also probated as part of the will on January, 1905. On May 29, 1905, Horace Allen Mayhew filed his petition for the distribution to him of $40,000 in cash, and in such petition set forth the will and supplement, the admission of the same to probate, the appointment and qualification of the executors, the return of the inventory showing the value of the estate to be more than

$85,000, and alleged that there were no debts, and funds of the estate in the hands of the executors to pay the said sum. He further alleged that he had notified the executors of his election to take the $40,000 and had tendered and executed deeds conveying the real property to them, and persons who had purchased from them. Florence A. Hardy, a granddaughter of the deceased and the only child of George H. Mayhew, a deceased son of Mary Jane Mayhew, filed an answer to said petition in which she denied that petitioner had a right under the will to have more than the income of $40,000 for the period of his natural life. The court filed findings which are in substantial accord with the averments of the petition, save that as a conclusion drawn from the will it is found that petitioner "is entitled to have and receive of the moneys of said estate for his use for the term of his natural life, the sum of $40,000, and on his death *said sum* shall go to Charles P. Mayhew and Frank J. Mayhew, the sons, to Mary E. Phipps, the daughter, and to Florence A. Hardy, the granddaughter of the said Mary Jane Mayhew, deceased, in equal shares."

The distributive clause in the decree was identical with said finding, and the executors were directed to pay petitioner said sum for his use during the term of his natural life with interest thereon at the legal rate from August 3, 1904.

From this decree both petitioner and Florence Hardy appeal. The former contends that he is entitled to have said money distributed to him without restrictions, and the latter as stoutly contends that he was only entitled to the income or interest arising from said sum during his lifetime.

The motion to dismiss the appeal of petitioner must be denied. Conceding that it was necessary to serve notices of appeal on all legatees entitled to a share of the residue remaining after petitioner's demise, we think that the written appearance, acknowledgment of service, and consent that any judgment rendered shall bind them, filed herein by the parties not served, cures the omission and gives this court jurisdiction to determine the rights of all interested parties. (*Piercy* v. *Piercy,* 149 Cal. 163, [86 Pac. 507]; *McLean* v. *Schutzer,* 5 Cal. 70, [63 Am. Dec. 84]; *Hibernia Sav. etc. Soc.* v. *Lewis,* 111 Cal. 519, [44 Pac. 175].)

The petition to distribute the legacy was not premature. It was filed twenty months after letters testamentary were issued and the subsequent proceedings through which the supplement was probated as part of the will did not operate to compel delay in presenting such petition. The law expressly provides that any heir, devisee or legatee may present his or her petition for the distribution of the share of the estate to which they are entitled at any time after the "lapse of one year from the issuance of letters testamentary," and as this time had admittedly elapsed the petitioner had a right to demand that his share be distributed to him. (Code Civ. Proc., sec. 1663.)

The will must be so construed as to effectuate the intention of the testatrix, and to this end all parts thereof must be construed in relation to each other, so as, if possible, to make one consistent and harmonious whole. (Civ. Code, secs. 1317, 1324.)

Another rule requires that words used in a will be taken in their ordinary sense, and that effect be given to every expression therein. (Civ. Code, secs. 1324, 1325.)

Taking the will under consideration "by its four corners," and construing it in obedience to these rules, it seems clear that the testatrix intended that $40,000 should be *paid* to her husband for his unrestricted use during his lifetime. We are thoroughly convinced that the will can be given no other construction without thwarting the evident intention of the testatrix. It contains the direction that if her husband survived her he "*be paid,* for his use, his lifetime, the sum of forty thousand dollars." There is no room for construction of this language, for it is too plain to be misunderstood. If, however, further light is needed touching the intention of the testatrix, it is supplied by the clause immediately following the language just quoted, where she emphasizes her desire by saying "or if he wishes *he may have that much in value, whenever or wherever he may wish.*" If this is not enough to bring conviction as to the dominant idea she was trying to express, cumulative evidence of her intention is found in the third subdivision of the will where she directs that "whatever there may *be left* after my husband *has the forty thousand dollars* I wish to give to him the use of" shall be equally divided among her four children, who at the death of her husband shall also have "every dollar that is *not used*

for *his comfort* and *pleasure*," and then in the supplement, as if to clinch the proposition, she says with reference to the realty, "but in that I do not wish him to *keep* and *use* that as *his forty thousand dollars* or any part thereof unless he wishes to," and then adds by way of preventing possible misapprehension, "but my husband is not *to have* forty thousand dollars *besides* this real estate."

The supplement, which must be taken as the latest expression of her will, taken alone, clearly indicates that her design was to give her husband the $40,000 as fully and completely as the land which she had already deeded to him. He is clearly given full rein to do as he pleased concerning the realty. At his option he might keep it "as his forty thousand dollars," or any part thereof, but he could not have the money and real estate both. This idea is in accord with the general terms of the will, and but for the two expressions "his use his lifetime" and "I wish to give him the use of"—found respectively in the second and third clauses of the will, and the idea conveyed in the clause disposing of the residue which might remain at the time of her husband's death, no other construction would be possible than that she intended that he should take the money absolutely. But the supplement, referring as it certainly does, to the bequest in the main will, must be construed with the latter unless there is a clear repugnance, in which case the supplement must control. It is, therefore, necessary to give some effect to the expressions and residuary clause above mentioned, and to consider the expression upon which contestant places great reliance, where it is said, "I direct that my husband shall have the use of the money *or* the interest of it." Taking up the clause just quoted and construing it in relation to the part immediately preceding it, we can hardly escape the conclusion that the words "or interest of it" were used in line with her evident purpose to give him his choice, and to consult his wishes in that and all other particulars. A construction that would confine the bequest to the interest on $40,000 would not only be repugnant to the preceding language, but in absolute conflict with the supplement, which clearly expresses the intention that he shall have the money. We must adopt the only construction which will give this expression some effect, and that is that he could have the use of the money or the interest on it according to his wishes

which are clearly manifested in the petition herein. Any other construction would give undue weight to an isolated phrase as against oft-repeated and later expressions of testatrix, and be tantamount to making a new will. Clearly her design was to give him the money to use according to his judgment and discretion for his comfort and pleasure as long as he lived. Analysis of the will as a whole leads to the inevitable conclusion that her dominant intention and idea was that her husband would be *paid* and would *have* the money, or that much in value, according to his selection and pleasure, for his untrammeled use. Or, if he so desired he could retain the land already his and thus forego the payment of the money which he was evidently to use, with as little restriction as the land. This being the central, controlling, all-pervading and oft-repeated intention, her secondary or subordinate intention or idea as to what should be done with it *after* her main intention had been accomplished, cannot be allowed to impair, modify or nullify the dominant intention perfectly manifest in every line of the will, and particularly in the supplement.

The main precedent intention must be carried out, and then the secondary or subservient intention must be given such effect as the law may dictate. When a testator or testatrix gives positive directions that money or other personal property shall be paid or given to a legatee, and then directs the disposition to be made of it afterward, the latest direction is not only performable subsequently, but its performance is secondary and subordinate to, as well as dependent upon the performance of the precedent and primary direction. Here there is no difficulty in determining what the intention of the testatrix was, and the only difficulty suggested arises from the alleged effect of rules of law on the secondary and subordinate intention if the main intention is given full effect.

But this difficulty is more imaginary than real for we are to effectuate the intention of the testatrix in sequential order so far as rules of law will permit. We cannot violate, modify, change or nullify the plain direction that the *money* shall be *paid* to the petitioner for his use as long as he shall live, and that he shall *have it*, unless he chooses to retain land previously deeded to him, or selects that much in value in other property, simply because he may use all or the greater portion in the pursuit of comfort and pleasure. The contest-

ant who is only entitled to her share of every dollar that is not so used, cannot complain of such distribution or its possible results, for the very excellent reason that by the terms of the will she is only entitled to share in what may remain at the time of petitioner's death. Neither can we refuse to recognize the positive direction that he shall be *paid* and shall have this money to use as "*his* forty thousand dollars" during life because the legal effect of such payment may be to confer upon him an absolute right to do as he pleases in expending all or any portion of it for his comfort and pleasure. She has directed that he must be paid and have it. She clearly contemplated that he would use it as he pleased, for she recognizes his full right to do so by only attempting to dispose of what may be left after he has the unrestricted and uncontrolled use of it for his comfort and pleasure during his lifetime. In the very latest expression of her intention she places his right to use the money, and the manner in which he shall use it as his, on a par with his right to use the land, by placing the money in the scale with land already his and giving him the selection of either. And in the clause where she directs that it be paid to him, she again manifests her intention as to the use he will be entitled to make of the money by giving him the right to waive the cash and "have that much in value whenever or wherever he chooses." These plain and oft-repeated expressions of her intention and desire cannot be curtailed, ignored or disregarded, and if he uses every dollar of the money for comfort or pleasure according to his discretion, no right of contestant will be violated. As before stated she is only entitled to share in what may remain, even if every clause in the will is given full effect, and hence she cannot complain, much less ask that he be deprived of his plain rights, to the end that she may have more than the testatrix intended.

In the case of *In re Garrity,* 108 Cal. 473, [38 Pac. 628, 41 Pac. 485], the facts were almost identical with the facts in the case at bar. In that case the will gave the surviving wlfe all of the property, consisting of land, money in bank and chattels, for her use during her life, the remainder going to three children. The court distributed the estate by awarding her the share to which she was legally entitled as surviving wife, absolutely, and the balance of the estate, including $1,834.47 in money, was distributed to her for her use

during her life. Upon appeal, the very questions presented here were fully and carefully considered and it was held that she was entitled to receive the corpus of the money and other property, for the reason among others that the will implied that the estate might be diminished while in her hands. And so it is here, the will clearly implies, and the testatrix evidently contemplated that the sum might be diminished by petitioner, for only the unused portion remaining at his death is given to the children. Therefore the case cited applies with cogent force to the case at bar and the principles of law therein declared are controlling here. The decree of the court below was in full consonance with the aforesaid principles and with our construction of the will in every particular save one. The court found as a fact, and so decreed, that the full sum of $40,000 should go to contestant and her aunt and uncles in equal shares, upon the death of petitioner. This finding being nothing more than a conclusion of law, it is unnecessary to send the case back for further proceedings. It is, therefore, ordered that the decree therein entered be modified, by inserting before the words "said sum" on the fifth line of the distributive clause found at folio 74 of the transcript, the words "the unused portion of," thereby distributing the portion of said $40,000 remaining unused at petitioner's death to the residuary legatees.

As so modified the decree is affirmed.

Buckles, J., and Chipman, J., concurred.